IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASIMA BASITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-07-1222 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLANTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 13) and Plaintiff's cross Motion for Summary Judgment (Document No. 15).[1] Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

I.   Introduction

Asima Basith ("Basith") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration

---

[1] On August 8, 2007, pursuant to the parties' consent, the District Judge transferred this case to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 11.

1

("Commissioner") reducing her Supplemental Security Income ("SSI") benefits.  Basith argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision that a *bona fide* loan did not exist between Basith and her sons, who provided in-kind support and maintenance to her.  In addition, Basith maintains that in arriving at this decision the ALJ employed incorrect legal standards by following the Programs Operations Manual ("POMS").  In contrast, the Commissioner contends that there is substantial evidence in the record to support the ALJ's decision that Basith did not enter into a *bona fide* loan agreement, that this decision comports with applicable law as the ALJ properly used the Social Security Ruling ("SSR") 92-8p guidelines, and that the ALJ's decision should therefore be affirmed.

## II.   Administrative Proceedings

Basith applied for SSI benefits on January 23, 1996, claiming that she had been disabled since January 1, 1996, as a result of being schizophrenic.  Basith also claimed that she lived with others, that she did not contribute toward the household expenses, and that she purchased her food separately (Tr. 82-96).[2]  The Social Security Administration approved Basith's application at the initial stage, but reduced her SSI amount because Basith was living in the household of another and not contributing toward the household expenses.  (Tr. 106).  On March 28, 1997, Basith requested reconsideration of the reduction in her SSI benefit amount and manner in which the benefits were calculated, but the Administration denied her request.  (Tr. 111-115).

Thereafter, Basith requested a hearing before an ALJ.  (Tr. 116-117).  The Administration granted her request and the ALJ, Clifford A. Leinberger, held a hearing

---

[2] "Tr." refers to the transcript of the administrative record.

on June 10, 1998, and a supplemental hearing on February 10, 1999, at which Basith's claims were considered *de novo* (Tr. 29, 61).[3] On April 23, 1999, the ALJ issued a decision finding that Basith received in-kind support and maintenance ("ISM") from her two sons and that her SSI benefits were properly reduced under the presumed value rule. (Tr. 10-18).

Basith sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. *See* 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Basith's contentions pursuant to the applicable regulations and evidence, on August 21, 2001, the Appeals Council concluded that there was no basis upon which to grant Basith's request for review. (Tr. 3-4).

Basith then filed a civil action in the United States District Court for the Southern District of Texas on September 28, 2001, seeking review of the ALJ's final decision. On July 11, 2002, the Court entered a judgment reversing the decision of the ALJ and remanding for further proceedings pursuant to 42 USC Section 405(g). Accordingly, on October 15, 2002, the Appeals Council vacated the final decision and remanded the case to the ALJ for further proceedings, stating as follows:

> Upon its receipt, the case will be assigned to an Administrative Law Judge pursuant to the order of the Appeals Council. The Administrative Law Judge will offer the claimant an opportunity for a supplemental hearing, develop the record and issue a new decision.

---

[3] A hearing was scheduled on May 7, 1998, but was postponed until June 10, 1998, to provide for the attendance of an interpreter. (Tr. 25-28).

In his decision, the Administrative Law Judge held that the claimant was a part owner of the home in which she lives; and that she did not contribute her pro rata share of the household expenses; and that her supplemental security income was subject to reduction due to her receipt of in-kind support and maintenance from within the household, i.e., from her sons. The Administrative Law Judge based his decision, in part, on information he received which showed that the claimant, and not her son, was the owner of the home property (Exhibits 11 and 12).

The claimant's representative contended that the decision is erroneous because a bona fide loan agreement existed between the claimant and her sons for repayment to them for her share of the shelter expenses once she started receiving supplemental security income payments. The record does not contain statements and/or documents from either the claimant or her sons in support of this contention. The Appeals Council, upon direction of the court, hereby remands this case for further proceedings.

Upon remand, the Administrative Law Judge will offer the claimant an opportunity to submit additional information and/or testimony regarding whether she and her sons entered into a bona fide agreement to the effect that the assistance they provided to her constituted a loan, within the meaning of Social Security Ruling 92-8p. The Administrative Law Judge will have Masood Basith and Zia Basith, the claimant's sons, appear at the oral hearing. He will question the claimant and her sons regarding the purported loan of in-kind support and maintenance and will ascertain the following: whether the loan agreement was oral or written, what was the nature of the agreement, the amount of the outstanding loan, when they entered into the agreement, what provisions were made for the repayment of the loan, what type of repayment schedule is there, what actions would the sons make if the claimant failed to repay the loan, has the claimant repaid any funds to her sons and the amount of any repayment, etc. The Administrative Law Judge will have the claimant and her sons submit any information they have which would support their contentions that the assistance constituted a loan enforceable under state law.

The Administrative Law Judge will question the claimant regarding whether she is contributing to the household expenses or is still receiving assistance from her sons.

Upon completion of the record, the Administrative Law Judge will make findings and issue a decision regarding whether the assistance the claimant received from her sons constitutes a bona fide loan (Social Security Ruling 92-8p) or chargeable unearned income in the form of in-kind support and maintenance.

(Tr. 172-174).  Following a hearing before the ALJ on June 23, 2005, at which the ALJ obtained testimony from Basith and her two sons regarding the alleged loan agreement, the ALJ again, on October 19, 2005, issued a decision finding insufficient evidence to show the presence of a *bona fide* loan agreement, that Basith received in-kind support and maintenance, and that such income was properly valued under the presumed value rule.  (Tr. 188-208, 159-163). [4]  Basith's subsequent request for review by the Appeals Council was denied on February 10, 2007, at which time the ALJ's October 19, 2005 decision became final.  (Tr. 141-146).

Basith filed a timely appeal of the ALJ's decision.  Both Basith and the Commissioner filed Motions for Summary Judgment (Document Nos. 13 & 15).  This appeal is now ripe for ruling.

### III.   Standard for Review of Agency Decision

The court's review of a reduction in SSI benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards."  *Bormey v. Schweiker*, 695 F.2d 164, 167-68 (5th Cir. 1983).  Indeed, Title 42, Section 405(g) of the Act limits judicial review of the Commissioner's decision as such: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause

---

[4] On February 25, 2005, the ALJ continued the hearing in order to obtain an interpreter. (Tr. 183-187).

5

for a rehearing" when not supported by substantial evidence. *See* 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety in order to decide whether the decision is supportable, the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Accordingly, conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

As used in the Act, the U.S. Supreme Court has defined "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983)). Substantial evidence is defined as "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices' or 'no contrary medical evidence.' " *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.   Burden of Proof**

An individual's eligibility for SSI benefits depends in part upon the income of the individual and the value of any resources owned by him or her.  *See* 42 U.S.C. § 1382(a), § 132c(a)(3)(A)-(C); 20 C.F.R. §416.110 and 416.1201.  Although an SSI recipient is paid a flat monthly benefit, that monthly benefit is reduced by the amount of "income" the SSI recipient receives.  *Hassbrock v. Barnhart*, 457 F. Supp. 2d 736, 739 (S.D. Tex. 2006).  "Income" is defined as "anything the individual receives in cash or in kind that the individual can use to meet her needs for food, clothing, or shelter."  *Id*.  Under the Act, loans are not considered "income" and cash is not considered "in-kind income."  *Id*.  "In-kind income" includes food, clothing, shelter, or something used to acquire those commodities.  *Id*.  In addition, "[i]n-kind income which is derived from someone else's payment of a recipient's food, clothing, or shelter" is considered in-kind support and maintenance."  *Id*.

There are two rules for valuing in-kind support and maintenance: (1) the "presumed value rule," and (2) the "one-third reduction rule."  *Id*. at 746.  The Administration applies the presumed value rule when an SSI recipient receives both food and shelter from another person, but is not living in the household of that person.  *Id*. at 740.  Under the presumed value rule, the Administration presumes the in-kind income to be worth a maximum value, which is one-third the recipient's federal benefit rate plus $20.  *Id*.  The presumed value rule is a rebuttable presumption.  Accordingly, an individual may present evidence that the actual value of the in-kind support at issue is less than the presumed amount.  *See* 20 C.F.R. § 416.1140(a)(2).

The Administration applies the "one-third reduction rule" when an SSI recipient lives in the "household" of a person who provides the recipient with both food and shelter. *Id.* at 739. Instead of determining the actual dollar value of in-kind support and maintenance, under the one-third reduction rule the Administration counts one-third of the federal benefit rate as additional income (regardless of its actual value). *Id.* Thus, the SSI recipient is subject to a one-third reduction in SSI benefits. *Id.*

The one-third reduction rule applies in full or not at all. *See* 20 C.F.R. 416.1133. The rule does not apply when an individual pays a pro-rate share of the household expenses. *Id.* In addition, when in-kind support and maintenance is provided as a loan, it is not considered income and the one-third rule does not apply. *Hassbrock*, 457 F.Supp.2d at 739. Accordingly, an SSI recipient claiming the presence of a valid loan agreement has the burden of demonstrating that any in-kind support received was "loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt." *Hickman v. Bowen*, 803 F.2d 1377, 1382 (5th Cir. 1986). The Administration considers a loan to constitute an advance of either cash or in-kind support for which a household member is *obligated* to repay. *See* Social Security Ruling ("SSR") 92-8p (emphasis added).

Here, the ALJ found that Basith received in-kind support and maintenance from her sons, and that upon application of the SSR 92-8p guidelines, Basith and her sons did not enter into a *bona fide* loan agreement. In this appeal, the issues presented by Basith are: (1) whether there is sufficient evidence to show the

8

presence of a *bona fide* loan agreement in this case; and (2) whether the ALJ properly applied the SSR 92-8P guidelines in determining that Basith and her sons did not enter into a *bona fide* loan agreement.

In determining whether substantial evidence supports the ALJ's decision, the Court must apply the guidelines set forth in SSR 92-8p.[5] As stated in SSR 92-8p, for purposes of determining when a loan is not considered income and when a loan is considered a countable resource under the SSI program, the following policies apply:

1. A loan means an advance from a lender to a borrower that the borrower *must repay*, with or without interest. A loan can be cash or an in-kind advance in lieu of cash. For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses. This applies to any commercial or noncommercial loan (between relatives, friends, or others) that is recognized as enforceable under State law. The loan agreement may be oral or written, as long as it is enforceable under State law.

2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment. Any portion of borrowed funds that the borrower does not spend is a countable resource to the borrower if retained into the month following the month of receipt.

3. When money or an in-kind advance in lieu of cash is given and accepted based on any understanding *other than that it is to be repaid by the receiver*, there is no loan involved for SSI purposes. It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such terms.

4. If there is a bona fide loan as defined in (1) above, there is a rebuttable presumption that the loan agreement is a resource of the lender for SSI purposes. For example, an SSI applicant or recipient reports making a loan to a relative. The loan

---

[5] SSR 92-8p: Policy Interpretation Ruling Title XVI: SSI Loan Policy, Including Its Applicability To Advances of Food and/Or Shelter.

9

     agreement is oral. The oral agreement is found to be binding under State law. Accordingly, the loan is presumed to be a resource of the lender because it can be converted to cash if the lender calls for repayment from the borrower. The lender can rebut this presumption by showing that the loan cannot be converted to cash—for example, because the borrower died without leaving an estate.

5. Money a lender receives as repayment of a loan (which meets the definition of a resource) reduces the outstanding loan balance and is considered a countable resource to the lender in as much as the repayment amount represents a return of part of the loan principle; i.e., the total value of the resource, which is the repayment amount plus the outstanding loan balance, remains unchanged.

6. Interest on a loan is counted as unearned income to the lender in the month of receipt and, if retained, is a resource as in (2) above.

(emphasis added).

## VII. Discussion

### A. Evidence of a *Bona Fide* Loan

Evidence must be obtained with respect to the existence of a *bona fide* loan agreement. See SSR 92-8p. It is undisputed that Basith has received, and continues to receive, in-kind support and maintenance from her sons, in the form of household expenses, food, and mortgage payments for the house in which they all reside. (Tr. 193-195, 197-200). Thus, the sole issue in this case is whether Basith presented sufficient evidence to show that she and her sons entered into a *bona fide* loan agreement to the effect that the support they provided her constituted a loan within the meaning of SSR 92-8p.

As the SSI recipient, the burden of proof with respect to the showing of a *bona fide* loan was on Basith. In this case, Basith had two administrative hearings, one on

June 10, 1998, the other on February 10, 1999. Basith was represented by counsel and presented ample evidence at both hearings. Basith even stated that "the record has been fully developed" in her case. *See* Pl.'s Br. 7. Moreover, on June 23, 2005, Basith and her two sons testified before the ALJ about the validity of Basith's alleged loan. Basith testified that her sons lived with her, paid two-thirds of the mortgage payment, and covered all her other expenses. Basith testified as follows:

> A: I have my sons living with me.
>
> \*\*\*
>
> Q: Do you know what your monthly payments are?
>
> A: I don't remember exact amount, but somewhere between 700 and 800.
>
> Q: And how do you pay that?
>
> A: My kids pay it.
>
> \*\*\*
>
> A: Yeah, because he helps me to make the house payment, and also takes care of my expenses. Yeah, all my expenses he takes care of.

(Tr. 193-94).

Thereafter, Masood Basith testified that he paid for food and contributed to the mortgage payment. Even though Masood Basith testified that there was an agreement between himself and his mother that her entire SSI benefit would be used for her expenses, he acknowledged that there was no written loan agreement. On June 23, 2005, Masood Basith testified as follows:

> A: Yeah, I take care of all her expenses.
>
> Q: Does your mother give you her check?

11

A:    Yes.

Q:    The entire thing?

A:    Yes.

Q:    How do you handle that?

A:    Yes. I, it comes directly to her account, and then I take care of the food, shelter, and –

\*\*\*

Q:    Oh, one more thing. Do you have any kind of an agreement, any kind of written agreement or something that has to deal with the house, for the payments that are made?

A:    No.

Q:    Okay. All right. In other words, there's nothing to indicate there's a loan, is that correct?

\*\*\*

A:    It's a verbal agreement, it's not –

\*\*\*

Q:    What is the verbal agreement?

A:    That she will pay all the money towards her expenses.

\*\*\*

Q:    For the house?

A:    Well, portion of it goes to the house payment and the portion of it for her clothing and food and other stuff.

(Tr. 198, 202-03).  Thereafter, Zia Basith testified to the same arrangement.  On June 23, 2005, Zia Basith testified as follows:

> Q: Who provides for her well-being?  Food and clothing and so on?
>
> A: We do.
>
> \*\*\*
>
> A: Every money she gets, she gets it and gives it to us, and we spend it…
>
> Q: Do you have some kind of arrangement to facilitate this, these payments or something, do you have some kind of agreement that you've made?
>
> \*\*\*
>
> Q: Anything in writing?
>
> A: Just a verbal agreement.

(Tr. 206-07).

Despite ample opportunity to do so, Basith did not meet her burden of showing that the in-kind support provided by her sons was pursuant to a *bona fide* loan agreement.  In contrast, Basith presented no evidence of an actual loan agreement, oral or written, between herself and her sons.  For instance, Basith did not present evidence concerning the amount loaned, the period of time covered, or the terms of repayment.  *Compare Hassbrock*, 457 F. Supp. 2d at 738 (claimant presented a written loan agreement with the terms and conditions of the loan).  Thus, a review of the evidence and testimony in record shows that the ALJ's decision was well supported.  The ALJ, as was his province and obligation, weighed all the evidence and testimony in the record, and concluded that Basith presented insufficient evidence to show that a *bona fide* loan agreement existed between herself and her sons.  (Tr. 163).  In justifying this decision, the ALJ wrote:

13

> Although the claimant and her sons stated that there was a verbal agreement to repay living expenses from the claimant's [SSI] benefits, they were unable to give any details of the nature of the agreement. Specifically, the claimant and her sons were unable to state the amount of the loan, when they entered into the agreement, what provisions were made for repayment of the loan, the interest rate, what actions the sons would take if the claimant failed to repay the loan, what type of repayment schedule had been reached, whether the claimant had repaid any funds to her sons, and the amount of the repayment. They only stated that there was no written agreement.
>
> Moreover, the statements of the witnesses were inconsistent with each other. Zia and Masood each testified that the claimant gave them her Supplemental Security Income benefit check. Masood stated that all three family members owned the house, while Zia later stated that the house was owned by the claimant and was in her name. Masood also stated that both he and the claimant were on the deed. Rather than entering into a bona fide loan agreement, it appears that the claimants have simply decided to combine her income with their own when paying expenses in order to jointly support their mother.

(Tr. 163).

A review of the record indicates that Basith had the opportunity to present adequate evidence of an alleged *bona fide* loan agreement, but failed to do so. The ALJ, therefore, correctly found that Basith presented insufficient evidence to support the finding of a *bona fide* loan agreement. Thus, substantial evidence in the record supports the ALJ's decision.

### B. Policy Interpretation

SSR 92-8p provides a framework for determining when a loan is not considered income and when a loan is considered a countable resource under the SSI program. *See infra* pp. 9-10. Basith's main contention is that "the ALJ followed the POMS instead of Fifth Circuit law." *See* Pl.'s Br. 6. However, a review of the record and the ALJ's

14

opinion shows that the ALJ was not guided by the POMS, but, instead, properly addressed the guidelines set forth in SSR 92-8p.

SSR 92-8p was adopted by the Administration after the Fifth Circuit decision in *Hickman v. Bowen*. Accordingly, the guidelines set forth in SSR 92-8p are consistent with Fifth Circuit authority. In *Hickman*, the Fifth Circuit held that the burden of demonstrating the presence of a valid loan agreement is on the beneficiary. The *Hickman* court stated, "SSI recipients still must show that any in-kind support received was, in fact, loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt. *Hickman v. Bowen*, 830 F.2d 1377, 1382 (5th Cir. 1986). In addition, SSR 92-8p states: "The burden of proof with respect to the bona fide nature of the loan is with the applicant or recipient." Thus, contrary to Basith's claim, the ALJ's consideration of the validity of her alleged loan of in-kind support was properly guided by SSR 92-8p policy interpretation and governing Fifth Circuit authority.

Likewise, because Basith presented insufficient evidence to show that the in-kind support provided by her sons was a loan, the ALJ properly regarded the in-kind support as "income" under the guidelines provided by SSR 92-8p. *See infra* pp. 9-10. Because Basith accepted in-kind support from her sons, yet failed to show that her acceptance was based on the intention to repay her sons, the ALJ properly concluded that there was no *bona fide* loan for SSI purposes.

Basith also contends that "donative intent" is relevant to this case, claiming that "[w]hen no donative intent appears, there is no gift." *See* Pl.'s Br. 6. However, the in-kind support provided to Basith by her sons was not revocable; rather, the in-kind support Basith received was in the form of

15

consumables (i.e., food, clothing, utilities, etc.). Because Basith only received in-kind support in the form of consumables, revocability is not an issue in this case. Accordingly, donative intent is not relevant to this case. Thus, even though Basith and her sons testified that they intended for the in-kind support to be repaid, such testimony is not germane because donative intent is not at issue.

Likewise, Basith argues that, under Texas law, "an incompetent is liable under an implied agreement for the reasonable value of necessities." *See* Pl.'s Sur-Reply Br. 2 (citing *Bowman v. Bowman* for 96 S.W. 2d 667, 668) (CCA TX, Eastland 1936). However, while the *Bowman* court found that necessities provided to an infant or an insane ward constitute an implied contract, the court also found that an implied contract cannot exist when those giving support to a ward never refused to provide support. *Id*. at 669. In fact, the court in *Bowman* found that the appellee, who provided support for his brother (the ward), did *not* have an implied contract for reimbursement because he had *always* supported his brother. *Id*. Similarly, because Basith has always received in-kind support from her sons, she does not have an implied contract for reimbursement with them. Thus, there is no implied contract between Basith and her sons and Basith's incompetence is not an issue in this case.

The sole issue in this case is whether Basith presented sufficient evidence to show that a *bona fide* loan existed. Thus, the ALJ properly addressed the question of whether a *bona fide* loan existed between Basith and her sons. The ALJ was properly guided by the SSR 92-8p guidelines and did not rely on inappropriate factors in making the determination.

16

## VIII. Conclusion and Order

Considering the record as a whole, the Court concludes that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of reduced SSI benefits on these facts. *Bormey*, 695 F.2d 164. As the ALJ's decision was supported by substantial evidence and comports with applicable law, therefore, it is

ORDERED that Defendant's Motion for Summery Judgment (Document No. 13) is GRANTED, Plaintiff's cross Motion for Summary Judgment (Document No. 15) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas this 25th day of June, 2008.

*Frances H. Stacy*
Frances H. Stacy
United States Magistrate Judge